Here to you, here to you, here to you, is the Honorable Appellate Court of the 2nd Judicial District. It is now back in session to proceed to adjournment. The Honorable Robert E. Flair, presiding. Please be seated. Mr. Rogers, this case will be docketed for a brief time. If you would like to continue that, you have five seconds. Before we begin, I would like to introduce Mr. Anthony DiGiorno Votel, the defendant's appellant. Our hearing will be on behalf of the defendant's appellant, Mr. Paul Rogers. Our hearing will be on behalf of the defendant, Anthony, and his family and friends. Mr. Rogers, do you work in the neighborhood by any chance? Yes. And I've never heard that before. Although I will say, if there is somebody that compares to you, I certainly wouldn't mind being compared to that man. May it please the Court, Counsel, my name is Paul Rogers, I'm with the Appellate Defendant's Office, and I represent Darwin Sartell. As you know, there are two issues in this case. The second issue involves an improper DNA feed. The State has conceded error on that, so I plan to focus exclusively on the first issue, unless the Court has questions about the DNA issue. There was an order entered, sua sponte, requesting or ordering the parties to address two cases, one of which was Ellis, I believe. Yes. Have you had an opportunity to review those cases? I have, and first I want to apologize for not having caught those cases myself when I was preparing. Well, at least it doesn't disadvantage your client. That's true, and I don't think it does, I don't think it still does. Why? Why? Well, the threshold question is whether, as a matter of law, the threat of serious harm is inherent in the offense of aggravated discharge of a firearm. Is it, is the question. I'm struggling with that myself, because I don't see that threat of harm is an element of the statutory violation of discharge. Do or do not. I don't see that it is an element, if you look at the definition of discharging. Is the threat of harm specified in that statute? No, I would not believe I admitted that, even in the opening brief. It's not an element. However, I think it's important to distinguish between elements of an offense and factors that necessarily follow once that element is proved. And the element of the offense here is that you shoot at or in the direction of a person or an occupied vehicle. And I think that, intuitively, that there is an inherent risk of harm in that. And I think Ellison concedes that. It says, and I'm quoting, implicit in every offense of aggravated discharge is the threat of harm. Now, what's missing is the adjective serious. So, I guess, kind of come down to focusing on that adjective. In this case, the bullet struck the vehicle? Yes. Is that different than, should the sentence be the same as someone who intentionally shoots over the vehicle just to scare the occupants, as opposed to actually striking the vehicle? Can the court consider the extent of the threat in that sentence? Yes. And I think Ellison stands for that proposition, and I think that's well-established. And we have an oral that you can consider the degree of harm. So, we start with the proposition that some threat of harm, some risk of harm, is inherent in the offense. That's why it's elevated. Right. So, the question is, well, is it a threat of serious harm that's intrinsic? And what your hypothetical gets to is whether you, in order to prove the element of shooting in the direction of someone or at someone or at an occupied vehicle, you have to be in the direction or at implies close enough to potentially kick them. And one of the points that I tried to make, and the main point that I made in my opening brief, was that I cannot reconcile the proposition that the risk of serious harm is not inherent in the aggravated discharge offense with the attempted murder and murder cases that say where someone shoots at someone else, you can infer an intent to kill and, therefore, support a conviction for either attempted murder or first-degree murder. Now, those cases are both before and after Torres and Ellis. And if you flip that around, my point really is this. If there's no inherent threat of serious harm, how can you infer an intent to kill? So, if you can infer an intent to kill, then it seems to me implied that there's a threat of serious harm. And at some point, getting back to your hypothetical, Justice Briquette, and it's an example that Justice Smith used in Ellis, shooting six feet over the head of somebody. Well, at some point, let's say you're fleeing that way. And I turn around 180 degrees, and I shoot in the other direction. Just to let you know I have a gun because you can't see me. But I'm going to let you know I'm armed and you better keep running. That could never be aggravated discharge. It could be first-degree murder if you accidentally shot someone, though. Felony murder. Possibly under the theory of transferred intent. Felony murder. Yeah, possibly. But that's not really... That's what actually happened in Torres, right? Well, Torres was a transferred intent case that killed a person who was a custodian in the school. Right, right. And Torres does say that, this is the language that he uses, the element of that factor, seriousness of harm, threat of serious harm, is not inherent in aggravated discharge. But I think there's a couple points to be made here. First, I think, again, it conflates what's an element with what is a factor that falls from proof of that element. And second... Yeah, go ahead. Pardon me? No, finish your thought. Second, I think it's important to keep in mind that Torres wasn't just an aggravated discharge case, which distinguishes it from this case and from Ellis. It was a murder case, a second-degree murder case. And the issue that the defense raised on appeal was that the trial court had erred by considering the threat of harm because it was inherent in the murder. Now, admittedly, this is speculation, but I think that at least suggests that the issue of whether it's implicit in aggravated discharge wasn't fully briefed. And more importantly, it means that the statement that the threat of serious harm was not inherent in aggravated discharge is really dicta in Torres. And even if it's not, again, I go back to the point of I don't understand how you can have cases that say you can infer an intent to kill from the act of shooting at someone or in the direction of someone, which is synonymous, and at the same time say, but it's not intrinsic in the defense that there's a threat of serious harm. So let me see if I can put this down. So in a case in which the undisputed facts would be the person who fired the gun and shot the gun 20 feet over the car is a warning shot should be treated the same as a person who fired six bullets into a car. Because if you don't, then it's an element of every defense. Therefore, there should be no difference in the sentence between the two scenarios. That's your position. No, my position is there's a baseline threat of serious harm, baseline level of seriousness, so to speak. Beyond that, you can take into account the degree of seriousness. Why would that apply here? Because wasn't the car shot? Was there bullets in the car? There was one bullet. One bullet? One bullet. It lodged in the engine compartment. And because this was a guilty plea, the factual context is not as fleshed out as it would be if there were a trial. All we know really is that at the guilty plea hearing, the factual basis was, according to the state, the defendant fired a handgun at the person who was driving the other car and hit the truck. There was nothing about how close it came to the person and how far away he was. I think you can infer he was fairly close because at the sentencing hearing, the trial judge commented about some things that had been said in the 402 conference showing that there was bad blood between these two individuals and they encountered each other either possibly by chance on the street. And the victim actually rammed, used his truck or car to ram the defendant's vehicle, and that's when the defendant fired the shot. We don't know how close the shot actually came to hitting anybody. We don't know whether the defendant was aiming at anybody. What would happen in a situation where the defendant shoots at person A, but he aims five or six feet to the right of person A, and the bullet proceeds down the street and breaks a window within a foot of person B. And then he fires another shot and it misses A. This time it hits B and wounds B. If there are multiple counts, one relating to the bullet that hit the window, vis-a-vis the other count that related to the discharge or the charge for wounding the party B, why shouldn't the trial court be given the opportunity to determine even though the charge is correct and has been established that the bullet was shot in the direction of A, it came closer to harming B because the second shot in the general vicinity did infect B. And you're suggesting that there should be no consideration of the fact that it could have harmed other people No, I'm not suggesting that. I mean, it could have harmed, but there's no evidence that there was anything above what I before referred to when I was answering Justice Hudson's question. Well, my point is that the scenario I gave you isn't whether or not it should be greater or lesser. The question is more to the direction of is it a factor which should even be considered? Do we even consider the possible threats not only to the person that the bullet was aimed in the general direction of, but do we look at the totality of the circumstances, or are we constrained to only look at it insofar as it's danger to the person that is listed in the indictment? Well, if I understand you correctly... Good, tell me if you do. Well, I think my answer will tell you if I do. I think in the hypothetical you describe, I don't think it's proper for a court to consider the abstract possibility of serious harm to, say, B, C, D, and E, however far down you want to go, people who might be in the vicinity. This wasn't abstract. This was hypothetical, but it was specific and factual. Right, but I accept that distinction. What I was trying to emphasize wasn't whether or not the factor should weigh heavier or lighter. The question is should the factual scenario or the totality of the circumstances even be considered? Well... I could give you the reverse. He fired at five feet, and there was nothing for 20 miles. Right. Absent evidence that people were actually endangered, I don't think that a court can consider the mere possibility that at any time you shoot at someone, there is the threat that someone else, either the person you shoot at or someone else, will suffer serious harm. And that's what's missing in this case. Well, let me ask you another question. And that was present in Ellis. I'm not concerned with factual analyses. I'm concerned with whether or not there is allowed to be a factual analysis. It seems to me that it's your position that because of this baseline, we're not supposed to make any further inquiries as to what the totality of the circumstances were. Now, it may be that you could argue reasonably that since it was a plea and the factual background was so sketchy, we don't know whether or not there was a basis for factoring in danger, et cetera. The only factual scenario we have is, as you said, the bullet hit the engine block or the engine compartment. But then the question is whether or not hitting the engine department or compartment versus hitting the rear taillight is more or less egregious. The question is whether or not the judge should even consider those relative factors or those relative facts. Right. And I would say no. There has to be evidence that somebody else actually was, that there was evidence that you got above this baseline that I'm talking about. Well, there was. He shot at somebody on the streets of Rockford, shot at a vehicle on the streets of Rockford, the trial court. Obviously, it's a city. There's people in homes and businesses. There's no evidence as to exactly how many people were around. There doesn't have to be. It's in a community. It's not out in a rural setting. It's within the city of Rockford. He fired a gun at a vehicle. Right. But there's no evidence that he threatened harm to anyone beyond what would be, threatened serious harm to anyone beyond the harm that was threatened to the. The state's argument was that he did threaten serious harm against an individual whose simple act was to drive down the streets of Rockford. That was their argument, right? Right. And, you know, they're saying that that's the trial court was just considering the. . . Let's take that away. What's. . . take that away. If the court had. . . if this comment hadn't been made, would a sentence of 10 years have been inappropriate given the defendant's fairly extensive criminal history? Well, I. . . He's got an. . . you would agree he's got a pretty extensive criminal history. I dispute that. Aggravated battery with a baseball bat? That I believe was. . . the judges. . . the trial court's finding as to the. . . Didn't he have a prior conviction for aggravated battery? I believe that was as a juvenile, but. . . Regardless. Well. . . A serious prior conviction for a violent offense, correct? If it was a juvenile, it would be an adjudication, but yes. Adjudication also. They're considering a conviction for purposes of an adult-sourcing hearing. I understand. I don't mean to quip him. But what the trial court actually said about the defendant's criminal history was mixed. The trial court said that the juvenile history was, quote, horrendous. You can talk about the adult criminal history, and this was a 22-year-old. The adult criminal history was minimal. So I don't know what the trial court's view of the criminal history would have. . . The trial court would have found 10 years to be a proper sentence based on the criminal history alone. And I know I'm out of time. Well, you're not going to sit down until I have a very serious question to ask you. Okay. All right. There's another very serious issue looming here that could potentially affect the outcome of the case irrespective of what we decide on with your argument about inherent harm. And that is, as I understand it, you're proceeding under the second prong of the plain error analysis, correct? Actually, in the reply, I referred to both prongs. But I think the second prong probably would be your strongest argument. Yes. You also cited the Sanders case out of the Third District. Yes. And I'm not sure how the Sanders case helps you because in the Sanders case, the Court in the Third District acknowledged that our Supreme Court has equated the second prong of the plain error analysis with structural error. People versus Thompson are familiar with that. It involves cases where there's a systematic error that erodes the integrity of the judicial process and undermines the fairness of the defendant's trial. In Sanders, the Court concluded that notwithstanding the trial court's consideration of a factor inherent in the offense, and as you know from meeting Sanders, the judge, for whatever reason, essentially acknowledged he was considering an improper factor but then said it's there. Okay? So the Court then in Sanders, after I think a very good analysis, says considering a factor inherent in the offense of first-degree murder was not part of the limited class of errors which our Supreme Court has considered structural and reversible under the second prong. The Court went on to say, furthermore, after reviewing the sentencing proceedings, we conclude that the trial court's consideration of the improper factor, which was agreed to by all parties here, did not challenge the integrity of the judicial process, and they held that it was not plain error. Sanders concluded that it was not plain error. So how does Sanders help you? My reading of Sanders was different, and my recollection is that Sanders talked about the Clark case from the Illinois Supreme Court, which said that despite Thompson, second prong plain error was not limited to structural error, and that there was second prong plain error. So I guess I'll have to go back and look at this. People v. Sanders, 3rd District, order filed July 20th, 2015. It's a different case. I've got, is it 130511? That's what I'm looking at, yeah. Well. Paragraph 18, do you have it in front of you? I don't have that. Can you grab it here? All right. But, well, thank you. Yeah, and Ms. Campbell just handed me a copy of it. And it's actually dated June 13th, 2016. And paragraph 17, well, starting, I think, back on maybe paragraph 12 or so, talks about Clark and how Clark changed Thompson, and then talked about an older Supreme Court case, Martin, which the court found that both prongs of the plain error doctrine applied to this specific issue. And the conclusion was that, therefore, we reversed the defendant's sentence under the second prong of the plain error analysis, and we remanded the same sentence. So I'm not sure. I went to look at a different earlier Sanders case, apparently. But I'm sure coincidence had the same name, so. Well, I understand what it's like to have a common name. We found that out at the beginning of the argument, didn't we? Yes, we did. All right. Well, I've used up enough time, and I would just ask the court to vacate the sentence, remand for re-sentencing. And, again, thank you. Thank you. Do I have an opportunity to make the follow-up? Ms. Campbell? Your Honors, my name is Diane Campbell. I represent the State in this matter, and I would like to apologize to the court for its necessity for sending out the directed order for the argument. Clearly, that was an error on my briefing part, and those cases should have been included in my brief. That is a point that has been raised in the past with both offices, both staffs. Research has to be refreshed, and Mr. Rogers, I apologize, but it's really not excusable. I can recall from my own days as a prosecutor, because I had shepherdized an issue in a case that was only seven days old from the Supreme Court, which back then was impossible to find, but you eat the bullet. I think we've mentioned this several times. You have to refresh your research. Clearly. In any event, are Ellis and Torres controlling now? Yes. In order to address some of the issues, and this goes, I think, to one of Justice Hudson's questions, is it's not inherent in the offense. So this morning, I actually looked up in the dictionary, and inherent is an inseparable part, and implicit is understood but not directly expressed or contained in the nature but not readily inherent. So perhaps if we refer to inherent and then implicit, that might help a little bit with the division. The Ellis case and Torres clearly say that it is not inherent in the offense. Even in the Sanders case, which opposing counsel added with this motion for additional authority, the holding there is that the rule of an inherent factor is not meant to be rigidly applied because policy dictates that a sentence vary according to the circumstances of the case. And I think that kind of includes questions by all of you. And again, in Ellis, it says that it does a very good job of pointing out that not all aggravated discharges are created equal. You know, he compares, you know, shooting six feet over the head with, you know, a bullet that whizzes right by somebody's ear. In this case, the trial judge was taking the circumstances into effect or into consideration on page 166 of the report of proceedings. After he's done a little bit of the review of the factual basis, the judge asks, so no one was injured, is that correct? And the assistant state's attorney said, no, the bullets were removed from the truck and they didn't strike the person inside. The judge asked how many bullets were shot at the truck. The assistant says there were two recovered from the truck. She believed them from the engine compartment. And then the defense attorney said he believes that there was just one bullet which was recovered later. So the trial judge is clearly looking at the facts and the circumstances. He also looks at, and I believe it was Justice Burkett who also noted this, that there are danger to other people. It is in the middle of Rockford. There are people who are walking around that could be endangered. Certainly the tourist case illustrates the danger of, you know, firing, you know, within a city limits. So there are different levels of threat, you're saying, based on how the shot was aimed, where it was fired, things of that nature. Yeah. They're not all the same. The whole thing of the majority of the cases is that, let me paraphrase from the Dowling case. In determining the exact length of a sentence within the range, the court can consider as aggravating factors the degree of harm caused to the victim, even where serious bodily harm is arguably implicit in the offense. And that's at page 943, and that's this court's decision from 2009. So clearly, and the consensus of the case law is that you can consider the facts and circumstances of the offense when you're determining the appropriate sentence within the range. Clearly the trial court is doing that here. Even when he mentions about the facts and circumstances... Sorry. Anyway, this is on page 185 of the transcript. He talks a little bit about he hit a truck with a bullet, but he easily could have hit the person in the truck or other people in the area. So it didn't cause serious bodily harm, but it certainly threatened serious bodily harm or death. Under the factual scenario presented to me. So clearly he is considering that. And then right after that, he goes into his comments. The defendant's record is replete with weapons offenses. So he has apparently, no matter how often he's told he can't have guns, he continues to use and carry guns. As I said, he had a gun at this time, even though he wasn't legally permitted to do so. I believe sending him to the Department of Corrections is necessary under the law, but it's also necessary to deter others from committing a similar offense. I do believe more than a minimum sentence is required. A double-digit sentence is appropriate. And then he states, I'm sending this gentleman to 10 years in the Department of Corrections. That's the lowest double-digit sentence that he could impose on the defendant. It's clearly due to his criminal background. He referred to the juvenile history as horrendous. He then said, you know, perhaps the defendant's adult history isn't so bad as I've seen from other defendants, but that adult history was only four years, two of which were spent in prison, and the judge noted that. I think clearly the case of Ellis, which Your Honors found, is the most similar to ours. It says it's not an inherent element, it's implicit, but you need to consider the circumstances, because not all cases are equal. I'd also like to point out that in Ad Belhadi, which is this court's decision in 2012, you note that it's important to note there's no requirement that a minimum sentence be imposed in the absence of aggravating factors. Clearly we don't have an absence of aggravating factors. Defense counsel asked for six years, the state asked, I believe, for 12 or 15, I can't quite remember. So the trial judges clearly made a reasoned and dispassionate determination of the appropriate sentence. That's a quote from Dempsey at page 598. The doubting case also notes that you should consider the record as a whole rather than focus on a few words of the trial court. And I think if you indeed look at the sentencing record as a whole. Is the discharge of a firearm malin per se? Is throwing a knife malin per se? Is shooting an arrow malin per se? Is going through a stop sign malin per se? I think, I'm trying to remember which court said that the only requirement, this may be Ellis, let me check. A person commits aggravated discharge of a firearm when he knowingly or intentionally discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows to be reasonably or reasonably knows should be occupied by a person. So that is part of the reason why serious harm isn't an inherent element. And I think that intent for serious harm isn't necessarily an element either or even implicit in the factor. Because I think it was Justice Burkett noted, you know, if you're shooting six feet above the head. This is slightly different than a statute that says anybody that discharges a firearm with the intent to injure someone is malin per se. Do you see the difference between the two or not? Yes. I shot an arrow into the air, it fell to the ground, I know not where. Well, if I don't know where it fell, how am I supposed to be guilty of quote unquote having intent to harm someone? This statute requires that you fire in the direction of a person or an occupied vehicle. Do you know how hard it is to hit somebody at 21 feet? With a firearm, especially a handgun? In this case, he hit the engine block of the occupied vehicle. And he killed the engine, right? Well, yeah, or at least seriously wounded him. And there's also, there were, I mean, the prosecutor said there were two bullets. The defense counsel disagreed with that. One bullet was recovered, but the prosecutor said there were two that hit the vehicle, correct? The prosecutor, I believe, said that there were two shots fired and that the bullets went into the body engine. But she said believe. The defense counsel then followed up with they believed that there was a bullet recovered later and that was the only one. So there's not a definitive answer. We have a disagreement on that. But clearly, if he's killing the engine, he is not firing a warning shot, you know, over the top of the vehicle. He is, you know, his aim may be a little off, and so he kills the engine instead of going through the windshield. But it's clearly not just in the direction of the occupied vehicle. It's in the direction of the defendant sitting in the vehicle. When I was looking at this case, it just reminded me of ground we've already covered in other statutes. For example, aggravated battery, great bodily harm. Not all aggravated batteries are the same. The seriousness of the injury differs from case to case to case. And the seriousness of the injury is a relevant factor for sentencing, correct? Correct. Is this any different? No. I think a lot of the cases that we referred to in the briefs dealt with murder, where there is clearly, you know, an intent for bodily harm. So those, and I did try and distinguish those towards the end of my brief, noting that they're murder cases rather than this. I think clearly Ellis is the most analogous case we can have, and that clearly supports the state's argument. A brief comment about the resentencing and remand. In Dempsey, it says there's no remand where the factor is an insignificant element of the defendant's sentence. And again, the court says, you know, the judge did not make a reasoned and dispassionate determination of the appropriate sentence. Clearly, the trial judge did that here. Do you have any further questions? Thank you. And again, my apologies. Mr. Rogers. Mr. Rogers, a quick point of question. Is the essence of your position that the aggravated discharge cases are all created equal for purposes of sentencing? No. My position is that they all have implicit within them a threat of serious harm. Which is what the court in Ellis acknowledged. Well, actually, Ellis left out the serious. But I think that I would go beyond that and say that the threat of serious harm is inherent in the offense. How severe the threat is, or how severe the threatened harm is, can vary. Well, in Ellis, the third district in line on TOR has further explained the implicit in every offense of aggravated discharge of a firearm is a threat of harm. And obviously, you agree with that. I agree with that. But as I said, they don't say serious harm, which is what the aggravated... It says harm. It goes on to say, however, that every aggravated discharge of a firearm threatens the same amount of harm. I'm reading that as saying there are different... The offense carries different levels of harm, as we've been talking about all morning, depending on whether you shoot into the vehicle or over the head. So where is the difference? What is exactly your position, then, on whether harm can be considered in sentencing an aggravated discharge case? I think there has to be evidence that the offense was accompanied by circumstances that showed something beyond the level of harm that would be expected in any time you shoot in the direction of a person, or in this case, in the direction of a vehicle. But what about the Indian car? The vehicle was damaged here. It obviously was aimed at the vehicle. Right. Not just in the direction. So how does that jive with your analysis when the vehicle was struck by a projectile? Well, I'm not sure that that counts as serious harm for purposes of the factor where there has to be harm to the person, as opposed to property damage, because it doesn't think damage is as harm. It could just be fortuitous. I mean, can't somebody aim at a vehicle's occupant just to hit the engine compartment? That's certainly possible, and vice versa. I do want to make just a few quick points. First, I think the mystery possibly solved about our confusion on the Sanders case. Yes. It's brought to my attention that the Sanders case that I cited, and was given leave to cite as additional authority, was actually an opinion issued after rehearing was granted. Okay. So what you may have been looking at, Justice Hudson, was the original before rehearing. Okay. So that explains that. Because the numbers were the same. That's why I was confused. Yeah. And I apologize for not noticing that earlier and mentioning it. Do you think this is a malin per se or a malin prohibitive offense? Shooting at someone? No, in the direction of. In the direction of. Well, to me, I think that's. Pardon? I think those terms are synonymous. They're virtually synonymous. I would be inclined to say it's malin per se. Shooting at someone is bad. You don't want that to happen. So this isn't reckless. This has some specific intent to injure someone. Well, as I said, and this courts have said that shooting at or in the direction of someone is sufficient to confirm the intent to kill. And so I go back to my point, which is if you. Yeah, but why do you say at someone as opposed to in the direction of? Because I could shoot over here. It's closer to the candle than it is to you, but it's in your direction. Well, at some point, a degree, a quantitative difference becomes a qualitative difference. And at some point, if you're no longer shooting, you know, if you're shooting 90 degrees away from me, I don't know that that's either and you know, it seems to me you're deviating from your argument in your brief a little bit. Now you're saying that the factual basis did not support threat of serious harm. Well, I would say I'm elaborating on it. Well, I think it's elaborating or deviating, but it's certainly different than what you argued in your brief. In your brief, you said the trial court cannot consider serious harm because it's implicit in the offense. That's what you said in your brief, correct? Right, but what I didn't say is that they can't consider the degree of seriousness. How is this different than aggravated battery great bodily harm analysis? How is it different? Every aggravated battery, there's great bodily harm, right? The trial court can consider the extent of the injuries. Right, I think that's analogous. It's no different, right? We go back to the problem of the paucity of the evidence here. We don't know what kind of day this happened. We don't know how many shots were fired. We don't know their trajectory. We don't know whether the attacker was at least one shot, hit a car, hit the city limits. That's true. I guess different people can draw different inferences from that, but I think also just quickly that as far as the relief is concerned and whether error occurred here, look at the number of mitigating factors that were cited versus the aggravating factors that were specified and to put it bluntly and somewhat with more simplification, the default position is if there is error of this type, there's a remand for resentencing. The record has to show that it did influence the sentence, not the other way around. So again, I would ask this court to vacate the sentence and remand for resentencing. Thank you. I ask that we take another advisement. The court is adjourned.